# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-1836V**

| | |
|---|---|
| SAMANTHA TERSIGNI,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 14, 2026 |

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Dorian Hurley, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On October 18, 2023, Samantha Tersigni filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table injury - that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine on October 1, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Ruling will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

After a full review of the evidence, and for the reasons set forth below, I find that Petitioner has established by preponderant evidence all requirements for a SIRVA Table injury, and is otherwise entitled to compensation for her injury.

## I. Abbreviated Procedural History

This case was initiated in October 2023 and subsequently assigned to the "Special Processing Unit" (as Petitioner alleged a Table claim) in February 2024. ECF Nos. 1, 8. Thereafter, on December 2, 2024, Respondent filed his Rule 4(c) Report defending this claim and recommending that compensation be denied. ECF No. 24. Respondent argues that Petitioner has failed to demonstrate that she "suffered the residual effects of her alleged SIRVA for more than six months following her receipt of the flu vaccine" as required under Section 11(c)(1)(D)(i) of the Act, and therefore compensation must be denied. *Id.* at 7-10.

## II. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the

patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited

establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. Section 11(c)(1)(A)(B)(D)(E).

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## III. Findings of Fact

### A. Severity

The sole issue to be determined in this case is whether Petitioner has satisfied the Vaccine Act's "severity requirement," pursuant to which a petitioner demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D). To do so here, Petitioner would need to establish sequelae from her alleged SIRVA persisted until at least April 2, 2022 (assuming an onset of October 1, 2021). The record supports the conclusion that Petitioner can do so.

As that record demonstrates, Petitioner sought relatively immediate care for her left shoulder pain (17 days post vaccination)(Ex. 1 at 310), and aggressively treated her left shoulder injury for the next five months, including: receiving prescription medication (Ex. 1 at 311), obtaining an orthopedic evaluation and follow-up care (Ex. 2 at 10-14, 45-48), undergoing a steroid injection and x-ray imaging (Ex. 2 at 13-14, 119), and engaging in seven physical therapy sessions.

Petitioner's last medical visit (before a substantial gap) for treatment of her shoulder was with her physical therapist on March 2, 2022 – five months and one day, or 152 days, after vaccine administration. Respondent correctly points out that at this visit she was discharged from physical therapy with her therapist noting that she had "[m]et all goals established in therapy," and "exhibits no limitations with shoulder ROM or strength." *See* ECF No. 24 at 8 (citing Ex. 3 at 184-85). Respondent argues that "any claim of persistent shoulder pain is undermined" by her ten-month gap in treatment, during which time Petitioner was seen by multiple subsequent providers, but failed to seek any treatment for her shoulder. *Id.*

While Respondent raises a reasonable objection to severity, he fails to closely read the medical record corresponding to Petitioner's March 2, 2022 final physical therapy appointment. A review of that record demonstrates that Petitioner had *not* met her short-term therapy goals – notwithstanding her therapist's statement to the contrary. Rather, this medical record states relative to the first goal of decreasing pain levels: "Insignificant change in NPR [numeric pain rating] (3/10 at worst); regarding Petitioner's second goal of improving her strength; and reducing the subacromial impingement likelihood, the record states: "Insignificant change recorded with overhead navigation;" and in regard to Petitioner's third goal of "improving her outcomes score (DASH) by 15%", the therapist concludes – no significant changed recorded (past three assessments: 2% *overall regression*)." Ex. 3 at 185 (emphasis added). Additionally, Petitioner failed to meet two of her four long term therapy goals as well (related to improving her outcomes (DASH) score and improving her pain levels." *Id.*

Additionally, beside left shoulder flexion and abduction, the record of exam states that Petitioner demonstrated "(impingement sign (subjective), no scapular compensation)." Ex. 3 at 183. Petitioner's diagnoses at discharge were "1. Acute pain of left shoulder" and 2. Impingement syndrome of shoulder region, left." *Id.* Petitioner also reported that she "*still has pain*, but persists through. Pain resonates afterwards (increased demand, exercise performance): always in the same region (apex: lateral aspect). Pain is tolerable; however *she does not sleep upon shoulder still*; now she is able to better manage hair, just *painful* during and sharp/twinges of pain, upon navigation from overhead." *Id.* (emphasis added). Petitioner's physical therapy "assessment" noted the following:

> *Impairments*: abnormal muscle firing, abnormal muscle tone, activity intolerance, impaired physical strength, pain with function, impaired balance, impaired functional mobility and impaired tissue integrity . . . .
>
> Assessment details: Sam exhibits no limitations within shoulder ROM, nor strength. *Audible clicking within shoulder* suggestive of impingement, a*bnormal* GHJ movement(dynamic) within overhead navigation performance. She was able to tolerate all PREs, including adding PNF patterns: *challenged* with movements, but able to complete, tolerate.
>
> Due to absence in objective impairments, despite sustained disability recording with QDASH (*minimal regression t/o past 3 assessments: 34, 32, 36% respectively*), a mutual agreement has been reached to transition towards self directed exercise performance over the upcoming months. Continued, periodic assessment of pain and symptomatic progression will

> continue(self), as to prevent further regression of dysfunction: encouraged to notify physician shoulder symptoms persist longer than another 6-8 weeks, or get worse.

Ex. 3 at 184 (emphasis added). The assessment also states that Petitioner had no "[b]arriers to therapy" and a "good prognosis." *Id.*

Ultimately, while Petitioner was discharged from physical therapy on March 2, 2022, as having "[m]et all goals established in therapy" (something which as discussed above is not supported by the record), it was also noted that her "[p]rogress in therapy ha[d] *reached a plateau*. Level of care to maintain improvements does not require skilled services. Patient *should continue to improve* with home exercise program." *Id.* at 185 (emphasis added). Accordingly, while Petitioner's shoulder injury symptoms had improved (in particular her range of motion and strength), the nature of Petitioner's left shoulder symptoms and treatment on March 2, 2022, support the conclusion that Petitioner's shoulder symptoms and/or shoulder pain likely persisted an additional month, or until *at least* April 2, 2022.

I decline to resolve at this time, however, whether Petitioner's SIRVA persisted until her December 27, 2022 video visit with her family medicine doctor, Princy A Koshy, MD – nearly ten months after her discharge from physical therapy. Ex. 1 at 788. Although Petitioner complained of shoulder pain continuing for almost a year at this appointment, and stated it started prior year when she got the vaccination at issue, the visit contains no reference to a physical examination of the shoulder. *Id.* Additionally, as Respondent points out, Petitioner's allegation that her shoulder pain persisted at this visit is undermined by an earlier visit to the same practice wherein she complained only of a "red dot" on her left arm which was ultimately assessed as a "bug type lesion." ECF No. 24 at 8-9 (citing Ex. 1 at 740-42). Of note, while Petitioner's October 21, 2022 visit was specific to a new "injury" to her left arm, the record contains no documentation that Petitioner suffered continued shoulder or arm pain related to her vaccination, despite the fact that the visit was for treatment/examination of the same arm.[4]

At present, then, the evidence preponderates somewhat against a favorable determination on that issue, although it goes to damages rather than entitlement. (I relatedly note that the record in this case strongly suggests that Petitioner's injury was relatively mild – a factor that I will take into account in any damages determination).

[4] I also note, as Respondent also points out, that Petitioner sought treatment for other conditions during her gap in shoulder treatment, although I observe that treatment appears to have been for issues unrelated to Petitioner's left arm or shoulder. ECF No. 24 at 8.

## B. SIRVA Table Requirements and Entitlement

Petitioner has established requirements for a Table SIRVA claim – which I observe were not contested by Respondent. 42 C.F.R. § 100.3(c)(10). There is no history of shoulder pain, inflammation, or dysfunction that would explain the post-vaccination injury. 42 C.F.R. § 100.3(c)(10)(i). Petitioner's pain manifested within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(c)(10)(ii). Petitioner's pain and reduced range of motion were limited to the shoulder in which the intramuscular flu vaccine was administered. 42 C.F.R. § 100.3(c)(10)(iii). And there is not preponderant evidence of another condition that would explain the symptoms. 42 C.F.R. § 100.3(c)(10)(iv). However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.*, receipt of a covered vaccine, *etc*. *See generally* Section 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed in this claim. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. A Damages Order will issue.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master